**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KISKADEE COMMUNICATIONS
(BERMUDA), LTD.,

    Plaintiff,

  v.

PHILIP R. FATHER and
EUGENE CACCIAMANI,

    Defendants.
                           /

No. C 10-05277 WHA

**ORDER STAYING PROCEEDINGS PENDING ARBITRATION**

## INTRODUCTION

Defendants move to stay this action pending arbitration. For the reasons stated below, the motion to stay is **GRANTED**, the claims being subject to arbitration.

## STATEMENT

Plaintiff Kiskadee Communications (Bermuda) Ltd. is a "Bermuda corporation formed to pursue and commercialize a Bermuda satellite orbital location controlled under international treaty agreement by the Government of Bermuda" (Compl. ¶ 11). In April 2007, plaintiff entered into a Subscription and Shareholders' Agreement ("joint venture agreement") with another Bermuda corporation, ProtoStar Ltd., to form a joint venture on October 2, 2008. This joint venture entity, ProtoStar Kiskadee (Bermuda) Ltd. ("joint venture"), was formed in order to implement plaintiff's right to commercialize the satellite orbital location.

1   The joint venture agreement established ProtoStar's and plaintiff's rights and obligations
2   with respect to the joint venture. To resolve disputes, the parties agreed to first attempt in good
3   faith to reach a mutual agreement. If such attempts failed, the parties agreed to resolve their
4   disputes in accordance with the Bermuda International Conciliation and Arbitration Act 1993.
5   The arbitration clause applied to "any matter or dispute or difference of whatever nature
6   howsoever arising under, out of, or in connection with this Agreement" (Father Decl. Exh. 1
7   at 23).

8   Plaintiff alleges that by October 2008, "ProtoStar's failing financial condition, severe
9   operational and cash flow restrictions imposed by creditors, and related corporate financing
10  constraints made it impossible for the company to act in a commercially appropriate manner on
11  the unique satellite opportunity" (Compl. ¶ 4). Allegedly, ProtoStar never provided any funding
12  to the joint venture. Plaintiff also alleges that ProtoStar never filed an application for the orbital
13  satellite location with the Bermuda Government. ProtoStar filed for Chapter 11 bankruptcy on
14  July 29, 2009. The Bermuda Government terminated Kiskadee's exclusivity right in June 2010,
15  and the opportunity to commercialize the orbital spot expired.

16  As for defendants' role in the suit, Defendant Philip Father was the chairman of ProtoStar
17  until its bankruptcy. He executed the joint venture agreement on behalf of ProtoStar, and was
18  the executive officer "chiefly responsible for ProtoStar's oversight and management of the Joint
19  Venture" (*id.* ¶ 9). He is also a director and chairman of the joint venture. Defendant Eugene
20  Cacciamani was an officer of ProtoStar until its bankruptcy. He was the "lead ProtoStar
21  executive responsible for pursuing the Joint Venture and was instrumental in convincing
22  Kiskadee to contribute its valuable satellite slot exclusive to the Joint Venture entity" (*id.* ¶ 10).
23  He was "the executive chiefly responsible for ProtoStar's day-to-day control and management of
24  the Joint Venture" (*ibid.*). He is also an officer and director of the joint venture. Plaintiff alleges
25  that Father and Cacciamani misrepresented ProtoStar's financial condition to plaintiff, and falsely
26  represented that ProtoStar would be able to fulfill its obligations under the joint venture
27  agreement.
28

2

Plaintiff filed suit on November 29, 2010, asserting eight claims: (1) breach of fiduciary duties; (2) fraud; (3) concealment; (4) negligent misrepresentation; (5) negligent interference with prospective economic advantage; (6) negligence; (7) unfair competition under Business and Professions Code Section 17200; and (8) civil conspiracy. Defendants responded to the complaint by filing the present motion to stay pending arbitration. This order follows full briefing and a hearing on the motion.

**ANALYSIS**

This case is governed by the Federal Arbitration Act, which empowers federal courts to stay actions arising out of disputes that are subject to an arbitration agreement. The Supreme Court has held that the Act leaves no place for the exercise of discretion by a district court, but instead mandates that the court direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985). The Act, therefore, establishes a federal policy favoring arbitration and requires courts to resolve any doubts concerning arbitrability in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The first question that must be asked is whether the parties agreed to arbitrate the dispute at issue. If so, the second question is whether any legal constraints external to the arbitration agreement foreclose arbitration of that dispute. If the answer to the second question is no, the court must direct the parties to submit to arbitration and stay the proceedings. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985).

Defendants seek to stay the action on the basis that the joint venture agreement's arbitration clause mandates that this action be stayed pending arbitration. Plaintiff advances several arguments as to why the action should not be stayed. Each will be addressed separately.

**1.    APPLICABILITY OF THE ARBITRATION CLAUSE.**

Plaintiff challenges the applicability of the arbitration clause to the present action. *First*, plaintiff argues that the underlying claims asserted in the complaint are not covered by the arbitration clause because they do not relate to or arise from the joint venture agreement.

3

*Second*, plaintiff argues that the claims do not involve a dispute between the parties to the joint venture agreement.

### A. Relationship Between Joint venture Agreement And Underlying Claims.

The language of the arbitration clause at issue here is extremely broad in scope. It applies to "any matter or dispute or difference of whatever nature howsoever arising under, out of, or *in connection with* this Agreement" (Father Decl. Exh. 1 at 23 (emphasis added)). "Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Such an arbitration clause "does not limit arbitration to the literal interpretation or performance of the contract." *Id.* at 720 (internal quotation marks omitted). "[T]he language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* at 721.

Plaintiff's first claim is for breach of fiduciary duties. The complaint alleges:

> Father and Cacciamani, as directors and officers of the Joint Venture and as directors and officers of ProtoStar, owed Kiskadee fiduciary duties of due care, good faith, loyalty and disclosure. The failure of Father and Cacciamani to disclose to Kiskadee the failing financial condition of ProtoStar and the corporate financing covenants and restraints on ProtoStar's permissible activities, together with their affirmative concealment of ProtoStar's financial defaults, working capital deficit and lack of management authority to pursue the Joint Venture's objectives, as previously set forth, violated each of these fiduciary duties.

(¶¶ 34, 35). This claim has a significant relationship to the joint venture agreement because the fiduciary duties defendants owed Kiskadee as directors and officers of the joint venture, were created by the agreement's establishment of the joint venture. Furthermore, such claims for breach of fiduciary duty are subject to arbitration. *See Mediterranean Enters., Inc., v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

Plaintiff's second claim is for fraud. The complaint alleges that "Defendants intentionally misrepresented and withheld material facts from Kiskadee during negotiation of and following execution of the Joint Venture Agreement" (Compl. ¶ 39). This claim has a significant relationship to the joint venture agreement, as plaintiff alleges that it was fraudulently induced

4

into entering the agreement. Such claims of fraud in the inducement of a contract are subject to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

Plaintiff's third claim is for concealment. The complaint alleges that "Father and Cacciamani concealed or suppressed material facts from Kiskadee" regarding the financial position of ProtoStar and its ability to fulfill its obligations under the joint venture agreement (Compl. ¶¶ 4, 5, 43). This claim has a significant relationship to the joint venture agreement, as it involves defendants' alleged concealment of the nonperformance of their obligations under the agreement. Furthermore, such claims of fraud under a contract are subject to arbitration. *See Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir. 1984).

Plaintiff's fourth claim is for negligent misrepresentation. The complaint alleges that "Father and Cacciamani failed to exercise due care and were without reasonable grounds for believing their representations to be true" regarding the financial position of ProtoStar and its ability to fulfill its obligations under the joint venture agreement (Compl. ¶¶ 4, 5, 47). This claim has a significant relationship to the joint venture agreement, as it involves defendants' alleged misrepresentation of their performance of their obligations under the agreement. As stated above, such claims of fraud under a contract are subject to arbitration.

Plaintiff's fifth claim is for negligent interference with prospective economic advantage. The complaint alleges that "Defendants' conduct in managing and operating the Joint Venture was negligent," and caused plaintiff to lose the economic benefit expected from its relationship with the Bermuda Government (*id.* ¶ 51). This claim has a significant relationship to the joint venture agreement because it arises from defendants' alleged failure to reasonably fulfill their obligations in regards to the joint venture, which were established by the agreement. Moreover, such claims of negligence are subject to arbitration. *See Pierson*, 742 F.2d at 338.

Plaintiff's sixth claim is for negligence. The complaint alleges that "Defendants failed to exercise reasonable care in overseeing and managing the operations of the Joint Venture" (Compl. ¶ 54). This claim has a significant relationship to the joint venture agreement because it arises from defendants' alleged failure to reasonably fulfill their obligations in regards to the joint

venture, which were established by the agreement. As stated above, such claims of negligence are subject to arbitration.

Plaintiff's seventh claim is for unfair competition. The complaint alleges that "[t]he acts and omissions of Defendants and Father and Cacciamani as alleged herein were unlawful, unfair and fraudulent within the meaning of the Unfair Competition Act, California Business and Professions Code § 17200 *et seq.*" (*id.* ¶ 57). These acts and omissions consist of the actions underlying plaintiff's first six claims. As these underlying acts and omissions all have a significant relationship to the joint venture agreement, as explained above, so too does the claim for unfair competition. Furthermore, such intentional tort claims are subject to arbitration. *Zolezzi v. Dean Witter Reynolds Inc.*, 789 F.2d 1447, 1449 (9th Cir. 1986).

Plaintiff's eighth claim is for civil conspiracy. The complaint alleges that "Father and Cacciamani, together with one or more persons presently unknown to Plaintiff, agreed and intentionally conspired to harm Kiskadee, obtain control of Kiskadee's valuable orbital slot asset and convert Kiskadee's commercial business opportunity for their own benefit, all by means of tortious and unlawful conduct" (Compl. ¶ 61). This tortious and unlawful conduct allegedly consists of breach of fiduciary duties, concealment, intentional or negligent misrepresentation, interference with prospective economic advantage, negligence, and unfair competition, as alleged in plaintiff's previous claims. As this underlying unlawful conduct has a significant relationship to the joint venture agreement, as explained above, so too does the claim for civil conspiracy. As stated above, such intentional tort claims are subject to arbitration.

Accordingly, all of the underlying claims have a significant relationship to the joint venture agreement. The arbitration clause applies to the present action.

### B. Defendants' Right to Enforce the Arbitration Clause.

As plaintiff points out, the signatories of the joint venture agreement are Kiskadee, ProtoStar, and the joint venture, not Father or Cacciamani as individuals. Defendants argue that Father and Cacciamani nonetheless are entitled to enforce the arbitration clause under both an agency theory and an equitable estoppel theory. As this order finds that defendants may enforce the arbitration clause under an agency theory, the equitable estoppel theory will not be addressed.

6

In certain circumstances, a nonsignatory to an arbitration clause may compel a signatory to arbitrate. *See Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986). In order to compel a signatory to arbitrate, a nonsignatory must be (1) a third-party beneficiary to the contract, (2) a successor in interest to the contract, or (3) an agent intended to benefit from the arbitration clause. *Britton*, 4 F.3d at 745–48. "[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents (*Letizia*) and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause (*Britton*)." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (Judge Jenkins).

As for the first factor, defendants are being sued for actions relating to their behavior as officers and directors of ProtoStar. The complaint describes this action as "a civil action for damages arising from the breach of fiduciary duties, fraud, negligence and related unlawful conduct of Defendants *in their role as directors and officers of ProtoStar Ltd. and affiliates* ("ProtoStar"), brought by an injured minority shareholder" (Compl. ¶ 1 (emphasis added)). The complaint alleges that defendants made fraudulent statements to plaintiff in their capacity as agents of ProtoStar (*see id.* ¶¶ 3, 5, 9, 10, 39, 43). Moreover, the complaint asserts that defendants, as directors and officers of ProtoStar, "owed Kiskadee fiduciary duties of due care, good faith, loyalty and disclosure" (*id.* ¶ 34). The complaint further alleges that defendants acted for the benefit of ProtoStar (*see id.* ¶ 6).

Plaintiff argues that "Father and Cacciamani are indisputably as a legal matter *not* agents of ProtoStar for purposes of the fiduciary duty and tort claims," because "breach of fiduciary duty and other tort claims against corporate officers are directed to the individuals in their personal capacity, since a corporation cannot as a matter of law engage in such an *ultra vires* conduct" (Opp. 9). On the contrary, the claims against defendants are arbitrable even though defendants were charged with *ultra vires* conduct. *Letizia*, 802 F.2d at 1188 (finding claims against nonsignatory agents arbitrable, even though they were charged with unauthorized churning of accounts, which is *ultra vires* conduct).

7

As for the second factor, each of the claims against defendants has a significant relationship to the joint venture agreement, as explained above. Defendants have a right to enforce the arbitration clause.

### 2. WAIVER OF ARBITRATION.

During plaintiff's bankruptcy proceedings, plaintiff asserted a breach of contract claim against ProtoStar, to which the arbitration clause was applicable. ProtoStar chose not to assert the arbitration clause as a defense. Plaintiff argues that this constituted a legal waiver of the arbitration clause, which binds defendants as agents of ProtoStar.

Plaintiff reasons that defendants should be bound by ProtoStar's alleged waiver of the arbitration clause because "[j]ust as acts of an agent within the scope of the agent's powers bind his principal as a matter of law, acts of the principal are equally binding on the agent" (Opp. 10). Plaintiff, however, does not cite any legal authority for this proposition. On the contrary, "[a] principal cannot bind its agent." *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, No. 99-C-4704, 2003 U.S. Dist. LEXIS 928, at *13 (N.D. Ill. Jan. 14, 2003). Accordingly, ProtoStar's alleged waiver of the arbitration clause could not bind defendants.

### 3. ENFORCEABILITY OF THE ARBITRATION CLAUSE.

Plaintiff argues that the arbitration clause is unenforceable. *First*, plaintiff argues that "ProtoStar no longer exists [because it has been liquidated], so as a result there is no party with which Kiskadee could arbitrate under the Joint Venture agreement in Bermuda" (Opp. 12). This is incorrect. Kiskadee may arbitrate with defendants Father and Cacciamani, as agents of ProtoStar.

*Second*, plaintiff argues that "[t]he Joint Venture agreement itself is 'null and void,' or at least 'inoperative,' since like all executory contracts in bankruptcy, it remained in force only unless and until ProtoStar as Chapter 11 debtor ratified it post-petition," which ProtoStar never did (*id.* at 13). Rejection of a contract by a debtor is not the legal equivalent of termination, however, but rather constitutes a breach of the contract. *See* 11 U.S.C. 365(g). The joint venture agreement still exists even though ProtoStar has been liquidated.

8

**CONCLUSION**

For the foregoing reasons, the parties are **ORDERED** to immediately proceed to arbitration of the dispute at issue. Pending arbitration, the proceedings herein are **STAYED**. The Court shall retain jurisdiction to enforce any award.

Based on representations during the hearing, however, there is a concern that defendants will use arbitration as a delaying tactic to prolong the proceedings. Accordingly, in the future after a reasonable period of time has gone by, plaintiff may move to lift the stay upon a showing that defendants have failed to expeditiously cooperate during the arbitration proceedings. Specifically, plaintiff may file such a motion if the arbitrators are not fully selected in **75 CALENDAR DAYS**, or if trial-type arbitration proceedings do not begin by **JANUARY 16, 2012**. This presupposes that plaintiff itself expeditiously and in good faith attempts to prosecute the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: March 22, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE